

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

FILED

APR - 6 2005

CLERK, U.S. DISTRICT COURT
By _____
Deputy

| | | |
|---|---|---|
| WILLA F. DIDWAY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 5:04-CV-237-C |
| | § | |
| JO ANNE B. BARNHART, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION

Plaintiff Willa F. Didway seeks judicial review under 42 U.S.C. § 405(g) of a decision

of the Commissioner of Social Security in which the Government Pension Offset (GPO),

20 C.F.R. § 404.408a (2004), was applied to her application for wife's insurance benefits.

The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this case to the

United States Magistrate Judge for report and recommendation, proposed findings of fact and

conclusions of law, and a proposed judgment. After reviewing the administrative record and

the arguments of both parties, this court recommends that the District Court affirm the

Commissioner's decision.

## I.     Standard of review

Judicial review of the Commissioner's denial of Social Security benefits is limited to

two issues: (1) whether the Commissioner's final decision is supported by substantial

evidence, and (2) whether the Commissioner used proper legal standards to evaluate the

evidence. 42 U.S.C. § 405(g) (2004); *Austin v. Shalala*, 994 F.2d 1170, 1174 (5th Cir. 1993) (citations omitted). Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support the Commissioner's decision, and if the court finds that the decision is supported by substantial evidence, it is conclusive and must be affirmed. *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002) (citations omitted).

**II.    Statement of the case**

Didway worked as a teacher for 38 years before retiring on May 31, 2002, and on June 11, 2002, filed an application for wife's insurance benefits under 42 U.S.C. § 402. (Tr. 21, 24-26, 66-67.   Under § 402(a) and (b), retirement benefits may be payable to a husband or wife based on the Social Security earning records of his or her spouse. However, in cases in which an applicant also receives a pension from a governmental entity, any benefit to which such an applicant may be entitled is subject to reduction by the GPO.  42 U.S.C. § 402(k)(5)(A); 20 C.F.R. § 404.408a.   Specifically, benefits received on account of a spouse's Social Security earnings must be reduced by two-thirds the amount of the applicant's pension and up to zero dollars, if necessary, when (1) the applicant receives a pension from a federal, state, or local government agency and (2) the applicant was employed by the agency in work that was "not covered by Social Security on the last day of employment."   20 C.F.R. §§ 404.408a(a),(d).   In many cases, the offset completely diminishes any benefit an applicant would otherwise receive. *See* 20 C.F.R. § 404.408a(d).

2

In this case, the offset would apply to Didway because she receives a pension from the Teacher Retirement System of Texas (TRST) and was employed by Post Independent School District (Post ISD) which did not cover its employees under Social Security. (Tr. 44, *See* Pl.'s Br. 2.)

Didway was aware of these facts. In addition, she knew that if applied to her, the GPO would reduce her spousal retirement benefits to zero;[1] therefore, she attempted to take advantage of a loophole utilized for years by Texas teachers to avoid the offset. (Tr. 66.) Essentially, Texas teachers, most of whom are employed by districts who do not cover their full-time teachers under Social Security, worked their last day of employment at a school district or in a different job within their own school district that was "covered by Social Security."[2] *See* 42 U.S.C. § 402(k) (2002) (amended 2004). Thousands of Texas teachers successfully utilized this loophole for years in order to avoid an offset in their spousal retirement benefits. Crucial to this loophole and to this case, however, is the requirement that the school district must have entered into a Section 218 Agreement with the Commissioner of Social Security under which the parties agreed to extend Social Security coverage to

[1]

Didway's gross pension payment is $3,133.74 and her Social Security spousal retirement benefits were $583.10. Two-thirds of her pension is $2,089.16. Therefore, under 20 C.F.R. § 404.408a, her spousal retirement benefits would be reduced by $2,089.16, which would offset her Social Security benefits of $583.10 to zero. (Tr. 12, 48.)

[2]

Congress closed this loophole by amending 42 U.S.C. § 402(k)(5)(A) so that the GPO is avoided only when an applicant has worked his or her last sixty months, rather than last day, of employment for an entity that is covered by Social Security. Social Security Protection Act of 2004, Pub. L. No. 108-203 § 418, 118 Stat. 483,531-32 (2004) (current version at 42 U.S.C. § 402(k) (2004)). Before this amendment, congressional auditors reported that the loophole could cost the SSA $450 million and that one-fourth of all Texas public education retirees, which was 3,521 individuals, used the loophole in 2002. *Texas Educators Work One Final Day in Effort to Cash in Before Loophole Closes*, LUBBOCK AVALANCHE J., June 30, 2004.

individuals employed by the school district. *See* 42 U.S.C. § 418.

Didway considered a number of options for her last day of employment but ultimately worked as a substitute teacher at Borden County Independent School District (Borden County ISD)[3] on May 31, 2002. (Tr. 19-20, 47.)  For her work that day, Borden County ISD paid Didway $75.00 in gross wages and deducted $4.65 in Social Security taxes. (Tr. 43.)

In early June 2002, Didway contacted her local Social Security Administrative (SSA) Office in Lubbock, Texas, and spoke with a claims representative who advised her about the documentation she should present with her application for benefits (Tr. 70), and on June 11, 2002, the day on which she filed for benefits, Didway met with the claims representative who reviewed and copied the documentation.  (Tr. 24-26, 47.)  Didway claims that the SSA representative calculated her spousal retirement benefits, told her that she would receive her benefit checks on the same day that her husband received his checks, and told her that with the exception of needing to provide documentation from the TRST, "everything was in order."  (*Id.*)  Didway claims that she attempted to provide the TRST documentation to the claims representative in person on June 24, 2002, but that the wording on the documentation was not correct and needed to be reworded.  (*Id.*)  Didway ultimately provided the correct documentation by fax to the attention of the claims representative on July 11, 2002. (Tr. 48.) On July 16, 2002, Didway spoke to the same claims representative by telephone and was told

---

[3]

Didway considered and contacted Borden County ISD first, but because she felt the likelihood of getting a position at the district on the last day of school was tentative, she also contacted the Region 17 Education Service Center in Lubbock, Texas, and Lubbock Independent School District (Lubbock ISD) for a position.  According to Didway, Lubbock ISD deducted Social Security contributions for their administrative and support staff as well as their substitute and part-time teachers.  (*See* Tr. 47, 67-69.)  For this reason, many teachers from surrounding districts and teachers within the Lubbock ISD sought to work their last day of employment in the district's administrative and personnel departments. (Tr. 47, 68.)  However, according to Didway, Lubbock ISD charged a $500 fee for allowing retiring teachers to work their last day of work in such positions.  (Tr. 69-70.)  Didway also considered Coleman Independent School District (Coleman ISD), which, according to Didway, charged a fee of $1,000. (Tr. 47, 69.)

that the document was exactly what was needed, that she would finish the necessary paperwork that day, and that Didway would begin receiving her spousal retirement benefits retroactive to the month of June. (*Id.*)

Despite these assurances, three days later on July 19, 2002, the claims representative contacted Didway and told her that she was ineligible to receive spousal retirement benefits because Borden County ISD did not have a Section 218 Agreement with the Commissioner of Social Security. (Tr. 48.) According to Didway, the claims representative's supervisor confirmed this determination and on July 22, 2002, another claims representative informed her that the Lubbock SSA office had just received a list of the school districts that did not have Section 218 Agreements with the Commissioner and that those districts who had deducted Social Security contributions in the absence of an agreement would be fined. (Tr. 49.)

Evidently, the Lubbock SSA office had, in effect, ignored or did not know that certain school districts, including Borden County ISD, did not have a Section 218 Agreement with the Commissioner and yet had allowed retiring teachers to avoid the GPO by working at these districts on their last day of employment. (*See, e.g.,* Tr. 81.) According to the superintendent of Borden County ISD, SSA representatives admitted that the Administration had been overwhelmed with teachers taking advantage of the loophole and was taking a stricter approach. (Tr. 79.)

Didway attempted to rectify her situation by inquiring with the TRST as to whether she could revoke her decision to retire but was told that her last day to make a revocation was

June 28, 2002. (49.)  She contacted the superintendent of Borden County ISD who in turn contacted the SSA to no avail. (Tr. 14, 41, 79.)  In addition, she provided a detailed statement to the SSA in which she explained the course of events that led to the denial of benefits by virtue of the application of the GPO and her contentions that the SSA had changed the rules and applied them unfairly to her.  (Tr. 47-50.)  Despite Didway's efforts, the Commissioner denied her application at the initial and reconsideration phases and an Administrative Law Judge (ALJ) also denied her claim.    (Tr. 7-15.)    The ALJ's decision became the Commissioner's final decision when the Appeals Council denied review.  (Tr. 3-4.)

Didway contends that she complied with the provisions of 20 C.F.R. § 404.408a and that the Commissioner's decision is incorrect.  She further argues that 20 C.F.R. § 404.408a and the offset provision therein does not mention the requirement of a Section 218 Agreement and that the Commissioner seeks to amend the provisions of § 404.408a by adding the requirement.  In addition, she argues that even if a Section 218 Agreement were part of the offset provision under § 404.408a, the requirement was observed in breach and that the Commissioner should be estopped from applying the requirement in her case and denying her benefits.

## III.    **Application of the GPO**

Congress specifically excludes individuals employed with state agencies from participating in the Social Security program. 42 U.S.C. § 410(a)(7).  However, Congress also provides that this exclusion does not apply to individuals who are employed by state entities who enter into a Section 218 Agreement under which their employees are included in the

Social Security program. 42 U.S.C. § 410(a)(7)(A). Thus, exclusion of state employees from the Social Security system is mandatory and the exception to the rule provided under §410(a)(7)(A) applies only when the state agency initiates an agreement with the Commissioner under Section 218. *See Sec'y of Health Educ. & Welfare v. Snell*, 416 F.2d 840, 843 (5th Cir. 1969) (citing 42 U.S.C. § 418).

In this case it was the responsibility of Borden County ISD to initiate a Section 218 Agreement with the Commissioner, 42 U.S.C. § 418(a); 20 C.F.R. §§ 404.1200(a), 404.1214(a), and the district's failure to do so is a matter between Didway and Borden County ISD rather than Didway and the Commissioner. *See Snell*, 416 F.2d at 843.

Didway's contention that Section 218 Agreements are not mentioned in 20 C.F.R. § 404.408a is correct but irrelevant. Section 404.408a addresses the application of the GPO rather than the measures a governmental entity must take to cover its employees in the Social Security program. *See id*. Governmental entities, such as Borden County ISD, must look to 42 U.S.C. § 418(a) and 20 C.F.R. §§ 404.1200(a), 404.1214(a) for the appropriate measures required to cover its employees under Social Security.

Although Didway sought to avoid application of the offset under § 404.408a by working her last day of employment for an employer that she thought was covered by Social Security, the absence of a Section 218 Agreement is indisputable; the superintendent of Borden County ISD admitted in a letter to Didway that the district did not have a Section 218 Agreement with the Commissioner. (Tr. 41; *see also* Tr. 14, 79-80.) It is equally indisputable that in the absence of a Section 218 Agreement between Borden County ISD

and the Commissioner, Didway did not work for an employer covered by Social Security on her last day of employment. Because Didway's last day of work was not covered by Social Security, the GPO must be applied to reduce any spousal retirement benefits to which she may be entitled, 20 C.F.R. § 404.408a, and Didway's contentions to the contrary must be rejected.

## IV.   Application of equitable estoppel

The doctrine of equitable estoppel is rooted in equity and is judicially applied to avoid injustice. *Heckler v. Cmty. Health Servs., Inc.*, 467 U.S. 51, 59 (1984); 28 AM. JUR. 2D *Estoppel and Waiver* §1 (2004). Although courts may apply estoppel to avoid injustice, it is not favored in the law and should be applied rarely and only in extreme circumstances. 28 AM. JUR. 2D *Estoppel and Waiver* § 3 (2004). Further, "[a] private litigant asserting estoppel in such cases bears a heavy burden." *Duthu v. Sullivan*, 886 F.2d 97, 99 (5th Cir. 1989), *cert. denied*, 496 U.S. 936 (1990) (citing *Heckler*, 467 U.S. at 60). Not only must such a plaintiff show the traditional elements of estoppel - (1) that the defendant was aware of the facts, (2) that the defendant intended his act or omission to be acted upon, (3) that the plaintiff did not have knowledge of the facts, and (4) that the plaintiff reasonably relied on the conduct of the defendant to his substantial injury - but he or she must prove affirmative misconduct on the part of the Government. *See Linkous v. United States*, 142 F.3d 271, 278 (5th Cir. 1998) (citation omitted).

Didway contends that the facts of her case cry out for estoppel. She argues that she is not the only one who did not know about the requirement of a Section 218 Agreement.

She claims that Borden County ISD was unaware of the requirement because for years they employed teachers who successfully avoided the GPO by working their final day of employment with the district. Further, the Commissioner's representatives at the Lubbock SSA office were not aware of the requirement because they allowed applicants to avoid the offset despite working their last days of employment with a district that did not have a Section 218 Agreement. In addition, Didway complains that the Commissioner's claims representative provided her with erroneous advice and even calculated the benefits that she should expect to receive after submitting her paperwork. She concludes that either the Commissioner's representatives at the Lubbock SSA office were not educated by the Commissioner regarding the need for a Section 218 Agreement, or they purposefully misled her. Finally, Didway contends that the Commissioner's failure to educate her own employees regarding the requirement of a Section 218 Agreement and her failure to implement a system by which applicants might be informed of the requirement was affirmative conduct sufficient to trigger estoppel.

Although the court sympathizes with Didway, equitable estoppel is not appropriate in her case. The application of estoppel against a government agency is particularly disfavored in cases in which disbursement of funds from the Treasury is at issue. *See, e.g., Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 434 (1990); *see also Schweiker v. Hansen*, 450 U.S. 785, 788 (1981). In fact, based on concerns related to the separation of powers, the United States Supreme Court has never applied equitable estoppel in a plaintiff's favor to require payment of funds from the Treasury. *See, e.g., Richmond*, 496 U.S. at 434. In

9

*Richmond*, the court acknowledged that the Appropriations Clause in the Constitution provides that money may not be paid from the Treasury unless authorized by an act of Congress. *Id.* at 424 (citations and quotations omitted). In this case, as in *Richmond*, the Plaintiff requests estoppel for the purpose of requiring the Government to pay money not authorized by statute. *Id.* The court held in *Richmond* that granting requests such as Didway's would "render the Appropriations Clause a nullity" in violation of the Constitution. *Id.* at 428. On this basis alone, estoppel should not issue from this court.

In addition, contrary to Didway's contentions, the facts of her case do not demonstrate affirmative action on the part of the Commissioner sufficient to trigger estoppel. Didway is certainly not the first applicant to rely on erroneous information from the Commissioner's representatives that ultimately led to a denial of benefits. The United States Supreme Court considered a similar claim in *Hansen* in which the plaintiff relied on erroneous advice from a SSA representative who failed to follow SSA policy. 450 U.S. at 786. Recognizing "the duty of all courts to observe the conditions defined by Congress for charging the public treasury," the court refused to apply estoppel, holding that courts are not authorized to overlook even procedural requirements that apply to the application of Social Security benefits. *Id.* at 788, 790-91.

The Fifth Circuit Court of Appeals has likewise considered such claims and rejected them. *See Jones v. Dept. of Health & Human Servs.*, 843 F.2d 851 (5th Cir. 1988); *Duthu,* 886 F.2d 97. In *Jones*, the applicant relied on erroneous advice from an SSA representative which resulted in forfeiture of benefits to which she would have otherwise been entitled had

10

she not relied upon the advice. *Id.* at 854. After the applicant challenged the denial of benefits, an investigation revealed, as in this case, that representatives at the applicant's SSA office had provided applicants with the erroneous advice for years. *Id.* at 853. Nonetheless, based on *Hansen*, the Fifth Circuit Court of Appeals held that neither erroneous statements from SSA representatives nor a failure to follow SSA policy would constitute grounds for estoppel. *Id.* at 853 (citing *Hansen*, 450 U.S. at 789-90).

In *Duthu*, the court was again faced with a plaintiff's request for estoppel based on detrimental reliance on erroneous advice from SSA representatives. 886 F.2d 97. In that case, the plaintiff sought surviving child's benefits on behalf of her children in 1979 one month after their father and her husband disappeared and was presumed dead as a result of a plane crash. Upon her first inquiry, an employee of the SSA informed her that she could not file an application on behalf of her children until she obtained evidence of her husband's death and that without such evidence, she would be required to wait seven years before she could file an application.

The plaintiff inquired again a few months later with another SSA employee yet was given the same advice. Her next inquiry was in October 1985 and she was, again, given the same advice. Shortly thereafter, one of the plaintiff's friends suggested that she contact an SSA administrator. The plaintiff did so and in November 1985, nearly six years after her husband disappeared, the SSA administrator informed the plaintiff that she could apply for benefits immediately and that she could have done so in January 1980 when she made her first inquiry. *Id.* at 98. The plaintiff filed an application for benefits in December 1985, and

11

the SSA determined that one of her children no longer met the age requirement to receive benefits and would receive no benefits and that the other child was entitled to benefits only as of May 1985. *Id*.

The plaintiff sought equitable estoppel claiming that the actions of the SSA employees constituted affirmative misconduct. The court rejected the plaintiff's claims. In so doing, the court emphasized that the plaintiff had never filed a written application and that although the SSA employees had advised her that it would be useless to file an application, they had not refused to allow her to do so. *Id*. at 100. The court held that refusing to allow the plaintiff to file an application might amount to affirmative misconduct sufficient to trigger equitable estoppel but that in the absence of such, the "misinformation and ineptitude" of the SSA employees were blunders that would not estop the Government. *Id*.

Likewise, in this case, the Commissioner's representatives did not refuse to allow Didway to work her last day of employment at a school district that had entered a Section 218 Agreement with the Commissioner. Rather, they provided erroneous advice as to whether she could avoid the GPO. The United States Supreme Court has held that a governmental agency "cannot be expected to ensure that every bit of informal advice given by its agents . . . will be sufficiently reliable to justify expenditure of sums of money," *Heckler*, 467 U.S. at 64, and that "[T]he United States is neither bound nor estopped by acts of its officers or agents in entering into an arrangement or agreement to do or cause to be done what the law does not sanction or permit." *Richmond*, 496 U.S. at 420 (quoting *Utah Power & Light Co. v. United States*, 243 U.S. 389, 408-09 (1917). Thus, the court has advised that "Men must

12

turn square corners when they deal with the Government." *Heckler*, 467 U.S. at 63 (citing *Rock Island A.& L.R. Co. v. United States*, 254 U.S. 141, 143 (1920)).

## V.    **Recommendation**

Based on the foregoing discussion of the issues, evidence and the law, this court recommends that the United States District Court affirm the decision of the Commissioner and dismiss Didway's Complaint with prejudice.

## VI.    **Right to Object**

Pursuant to 29 U.S.C.§ 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within 10 days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court. A party's failure to file written objections within 10 days shall bar such a party, except upon grounds of plain error, from attacking on appeal the factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Dated: _____April 6_____, 2005.

NANCY M. KOENIG
United States Magistrate Judge